**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:11-cv-14257-KMM

BETTY BOLLINGER,

> Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

> Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (ECF No. 18). Plaintiff filed a Response (ECF No. 33), and Defendant filed a Reply (ECF No. 38). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Response, Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND[1]

On October 21, 2008, Plaintiff Betty Bollinger was involved in a motor vehicle accident with Richard Armstrong in Port St. Lucie, Florida. As a result of the accident, Bollinger incurred physical injury, pain and suffering, and had her earning ability impaired. Nearly a year later, the automobile liability insurance carrier for Armstrong tendered to Bollinger an amount equal to Armstrong's policy limits in exchange for a full and complete release from future liability. Defendant State Farm Mutual

---

[1] The facts herein are taken from Defendant's Notice of Removal (ECF No. 1); Plaintiff's Amended Complaint (ECF No. 4); Defendant's Motion for Summary Judgment (ECF No. 18); and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 33). All facts are construed in the light most favorable to Plaintiff.

Automobile Insurance Company, as the issuer of Bollinger's liability insurance policy, authorized Bollinger to accept the offer and provide to Armstrong a full and complete release.

Bollinger, however, did not believe the amount of money received from Armstrong's liability insurance provider fully compensated her for the injuries she sustained in the October 21, 2008 motor vehicle accident. Consequently, Bollinger filed a claim against State Farm pursuant to a provision for uninsured/underinsured motorist coverage ("UM Coverage") contained within her liability insurance policy. On November 5, 2009, Bollinger's counsel sent State Farm a proposed settlement package that offered to State Farm the ability to settle the claim for $10,000—the policy limit of Bollinger's UM Coverage. The settlement package contained Bollinger's medical history, current medical records, and a list of incurred medical expenses.

On November 16, 2009, State Farm responded to Bollinger's proposed settlement by offering to pay $500 to settle Bollinger's claim against State Farm. Approximately one month later, Bollinger filed a lawsuit against State Farm in Florida state court because Bollinger felt she was entitled to the policy limit of the UM Coverage afforded by her liability insurance policy based on the injuries she sustained in the October 21, 2008 motor vehicle accident.

Between January and May 2010, Bollinger and State Farm exchanged various settlement offers. On May 19, 2010, after State Farm had rejected another proposed settlement by Bollinger, counsel for Bollinger informed State Farm that Bollinger would be seeking extra contractual damages against State Farm and thereby set up State Farm for Bollinger's bad faith claim. This seems to have resonated with State Farm, because approximately three weeks later, State Farm offered to pay Bollinger the full policy limit of $10,000 to settle Bollinger's claim. On July 12, 2010, Bollinger rejected State Farm's offer and the claim proceeded to trial.

On January 13, 2011, a jury returned a verdict in favor of Bollinger and awarded her damages in the amount of $410,000. Due to set-offs, this amount was reduced to $312,764.84. On June 20,

2

2011, Plaintiff amended her original Complaint to allege a first-party bad faith claim against State Farm. On July 20, 2011, State Farm removed the action to this Court.

## II. STANDARD OF REVIEW

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Moreover, "A party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" Ritchey v. S. Nuclear Operating Co., No. 10-11962, 2011 WL 1490358, at *1 (11th Cir. Apr. 20, 2011) (quoting Fed. R. Civ. P. 56(c)(1)). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III. ANALYSIS

Florida Statutes § 624.155 governs first-party bad faith disputes between an insurance provider and the insured. Section 624.155 provides that, "Any person may bring a civil action against an insurer when such person is damaged . . . [by the insurer not] attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly

toward its insured and with due regard for her or his interests." Id.  Section 624.155 later states that,

"*As a condition precedent* to bringing an action under this section, the department and the authorized

insurer must have been given 60 days' written notice of the violation . . . on a form provided by the

department and shall state with specificity . . . such other information as the department may require."

Id. (emphasis added).

State Farm argues that Bollinger has not filed a Civil Remedy Notice of Insurer Violation

("CRN") with the Department of Financial Services or State Farm.  According to State Farm, filing

such notice is a statutory condition precedent to bringing a cause of action under Florida Statutes

§ 624.155, and consequently, summary judgment should be awarded in favor of State Farm.  Bollinger

readily admits that she has not filed a CRN, but argues that she has substantially complied with Florida

Statutes § 624.155, and that the "formality of . . . Plaintiff's failure to file a CRN should not be

imposed against either Plaintiff, BOLLINGER, or Defendant, STATE FARM, as both parties were and

are well aware of the veracity of both claims."  Pl.'s Resp. Def.'s Mot. Summ. J., at 10 (ECF No. 37).

Bollinger additionally argues that because section 624.155 was enacted "in the public's interest," this

Court should "liberally construe" the statute to "accomplish the purpose for which it was enacted."  Id.

at 22.

In Talat Enterprises, Inc. v. Aetna Casualty and Surety Co., the Florida Supreme Court

evaluated the CRN requirement under Florida Statutes § 624.155.  The Court noted that

> extra-contractual damages that can be recovered solely by reason of this civil remedy
> statute cannot be recovered when the remedy itself does not ripen if the insurer pays
> what is owed on the insurance policy during the cure period. The statutory cause of
> action for extra-contractual damages simply never comes into existence until expiration
> of the sixty-day window without the payment of the damages owed under the contract.
> We find that in creating this statutory remedy for bad-faith actions, the Legislature
> provided this sixty-day window as a last opportunity for insurers to comply with their
> claim-handling obligations when a good-faith decision by the insurer would indicate
> that contractual benefits are owed.

753 So.2d 1278, 1284 (Fla. 2000).  According to the Florida Supreme Court, no cause of action exists until, *inter alia*, the CRN has been filed with the Department of Financial Services and State Farm. This is because "the remedy itself does not ripen if the insurer pays what is owed on the insurance policy during the cure period." Id.

Article III of the United States Constitution requires Courts to decide only cases or controversies.  U.S. Const. Art. III, § 2.  The doctrine of ripeness, which holds that courts should decide only "existing, substantial controversies, not hypothetical questions or possibilities," derives from this jurisdictional limitation.  See City Commc'ns, Inc. v. City of Detroit, 888 F.2d 1081, 1089 (6th Cir. 1989); see also Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). To determine whether an issue is ripe for review, "both the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review" are analyzed.  Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1291 (11th Cir. 2010) (quoting Harrell v. The Florida Bar, 608 F.3d 1241, 1258 (11th Cir.2010) (emphasis omitted)).  "The fitness prong is typically concerned with questions of 'finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed,'" id., and evaluates the likelihood that a contingent event will deprive the Plaintiff of an injury, id. at 1291, while the hardship prong analyzes "'the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal.'" Id. at 1291) (quoting Harrell, 608 F.3d at 1258 (emphasis omitted)).

Here, the entire basis for any case or controversy is contingent upon (1) Bollinger filing a CRN with the Department of Financial Services, (2) Bollinger filing a CRN with State Farm, and (3) State Farm refusing to cure the "contractual amount due the insured after all the policy conditions have been fulfilled" within sixty days of being served with the CRN.  Talat, 753 So.2d at 1283.  These hypothetical contingencies are significant, and mindful that the entire purpose of the CRN requirement and sixty day cure period is to provide State Farm the ability to remedy the situation, this Court cannot

say that Bollinger will suffer an injury if she so chooses to undertake the aforementioned action. To the contrary, State Farm having paid the policy limits moots this controversy in its entirety. Thus, the instant case is not ripe for review and the appropriate action is to dismiss this case for lack of subject matter jurisdiction.[2] Any conclusion to the contrary would undermine the purpose behind the pre-suit requirement and only serve to encourage gamesmanship similar to that sought to be played here.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Amended Complaint (ECF No. 4) is DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Clerk of the Court is directed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of January, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

---

[2] A detailed analysis of the "hardship" prong is unnecessary; this Court can think of no prejudicial harm that would result to either party by finding the instant action unripe.